**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____
                                        :
DEBRA FRASER-HOWZE, in her              :    CIVIL ACTION
individual capacity and as              :
Administratrix of the Estate of         :
Barron J. Wright                        :
                                        :
        vs.                             :    NO. 06-1460
                                        :
AGENT JEFFREY P. ASTER, in his          :
Official and Individual Capacities,:
AGENT ANTHONY L. MUSCARELLO, in         :
his Official and Individual             :
Capacities, and                         :
AGENT KIRK SCHWARTZ, in his             :
Official and Individual Capacities.:
_____:


HENRY S. PERKIN                                    MARCH 20, 2008
United States Magistrate Judge

<u>**MEMORANDUM**</u>

Presently before the Court is the Motion for Summary

Judgment filed by Defendants Agent Jeffrey P. Aster ("Agent

Aster"), Agent Anthony L. Muscarello ("Agent Muscarello"), and

Agent Kirk Schwartz ("Agent Schwartz") pursuant to Federal Rule

of Civil Procedure 56(c), the Response and the Reply to the

Motion.  For the reasons that follow, the Motion will be granted

in part and denied in part.

**I.    <u>FACTS</u>.**

Debra Fraser-Howze ("Plaintiff") alleges that Agent

Aster shot and killed her son, Barron J. Wright ("Wright"), on

April 13, 2004 in violation of his Fourth, Fifth, Thirteenth, and

Fourteenth Amendment rights.  The Defendant Agents were employed

by the Monroe County Bureau of Narcotics Investigation of the Office of Attorney General ("BNI-OAG") on April 13, 2004, and approximately 98% of their job duties consisted of investigating undercover illegal drug activities in and around Monroe County, Pennsylvania.  Schwartz Dep., pp. 11-13.  A critical part of the BNI-OAG's undercover drug investigations involved the use of confidential informants, who were required to complete applications and sign a working agreement.  Antinucci Dep., pp. 15, 18; Schwartz Dep., p. 19.

In or about April, 2004, Agent Schwartz was contacted by Brandi Depner ("Depner"), a confidential informant, who was a dancer at a strip club regarding an individual known to her as "B" [Wright] who had previously offered to sell her cocaine. Schwartz Dep., p. 14.  Depner arranged a meeting for Agent Schwartz to purchase cocaine from Wright.  Id. at 22-23. Accompanied by Depner, Agent Schwartz met with Wright and purchased an eighth of an ounce of cocaine.  Id.  Agent Schwartz indicated interest in a future purchase of two ounces of cocaine, they exchanged cell phone numbers, and Agent Schwartz told Wright that he would be in contact the following week.  Id. at 26.  A few days later, Wright called Agent Schwartz with a new cell phone number.  Id. at 27.  The following Sunday night, Wright called Agent Schwartz twice and asked if the exchange could take place on Monday, the following day.  Id. at 28.  On Monday

2

evening, Wright called Agent Schwartz and asked if the meeting could take place later in the evening because Wright had to go to Stroudsburg, about one to one and one-half hours away, to get the cocaine.  Id. at 29.  Agent Schwartz told him that was too late and Wright suggested that they meet at the Snydersville Diner at 10:00 a.m. on Tuesday, the following day.  Id. at 29-30.

The next day, Agent Schwartz met with Agent Aster, Agent Antinucci, Agent Charles, Agent Fraley and Agent Muscarello around 9:00 a.m. at the Monroe County Jail, which is located approximately two miles from the Snydersville Diner.  Id. at 41-42.  Agent Schwartz was to be the undercover agent meeting Wright in the parking lot.  Id. at 42-43.  Agent Antinucci was the supervisor, and would drive his unmarked car alone.  Id. at 43. The arrest was to be made while Wright was in or near his vehicle, and upon receipt of the arrest signal, Agent Antinucci was to move his vehicle into the area to the rear of Wright's vehicle.  Id.  Agent Fraley was to drive the arrest van, which was to be positioned near the front of Wright's vehicle.  Id. at 45.  The agents discussed how the van would be positioned in front of Wright's vehicle, and it was decided that it was to be parked at a slight angle at the front of Wright's vehicle, off to the side slightly so that the agents would not get run over when they exited the van.  Id. at 48.  Agent Fraley was to exit the van and stand at the front of the van between the open door and

the front fender of the van.  Id. at 50.

Agents Schwartz and Antinucci arrived at the diner in their vehicles and went inside separately.  Id. at 51; Charles Dep., p. 32.  The van driven by Fraley carrying Agents Aster, Muscarello and Charles was parked on a driveway a quarter of a mile away, on a hill overlooking the diner parking lot.  Charles Dep., p. 30.  Agent Schwartz saw Wright drive by the diner and had cell phone contact with Wright, telling him he was in the diner.  Id. at 51.  Wright came back, pulled in to the diner parking lot, and parked his Ford Explorer, and Agent Schwartz approached Wright's open window on his driver's side door.  Id. Wright told Agent Schwartz that he was nervous and asked if the exchange could take place somewhere else.  Id.  Agent Schwartz refused, and Wright repeatedly asked if they could leave.  Id. Agent Schwartz started to walk away, and Wright advanced to the next parking space directly in front of the one he previously occupied and called to Agent Schwartz to come back.  Id. at 52. Wright then agreed to show Agent Schwartz the cocaine, which was in an inside pocket of a heavy down jacket.  Id. at 53.  Agent Schwartz then went to his vehicle in the next row of cars, and gave the arrest signal, which consisted of going back into his vehicle as if to retrieve money.  Id. at 55.

Agent Fraley drove the van into the lot and angled it into the area to the left front of Wright's Explorer.  Id. at 59.

4

Agent Antinucci simultaneously pulled his vehicle perpendicular to the rear of the empty spot previously occupied by Wright, exposing the front left portion of his car.  Charles Dep., p. 41. Agent Charles exited the van, followed by Agents Aster and Muscarello, all with their guns drawn.  Aster Dep., pp. 36-37. Wright placed his vehicle in reverse, crashed into the front left side panel of Agent Antinucci's vehicle as he was emerging from it, and caused Agent Antinucci to be knocked back into his seat. Id. at 41; Fraley Dep., p. 65; Charles Dep., p. 50.

Wright then threw his Explorer into drive, and quickly advanced toward the front of the parking space he previously occupied, where Agent Fraley stood after coming around the van to assist Agent Antinucci.  Fraley Dep., p. 70.  Agent Fraley discharged his weapon, hitting the windshield of the Explorer. Id. at 75.  Agent Aster also discharged his weapon.  Aster Dep., pp. 54-55.  Wright maneuvered his Explorer out of the parking spot, hitting the front left of a dump truck parked in the parking spot to his right, and he drove out of the parking lot. Id. at 64.  Agent Antinucci immediately followed Wright, who was not traveling at a high rate of speed.  Antinucci Dep. at 108, 110, 112, 113-114.  Wright drifted across the center line of the road and went down an abutment or drainage slope, hitting a tree and causing it to split in half and fall on the roof of his Explorer.  Charles Dep., p. 63; Antinucci Dep., p. 113-116.

Agents Charles and Aster arrived at the scene and approached the
Explorer, telling Wright to put his hands up.  Antinucci Dep., p.
119.  Wright did not comply but instead moved around inside the
vehicle.  Id.  Wright then placed his hands outside the vehicle
through the open passenger door window and Agent Charles
handcuffed him, telling him that an ambulance was on the way.
Id.  While handcuffed, Wright maneuvered his torso up out of the
window, then his entire body, and came out of Explorer's window,
landing on his back on the ground.  Id. at 122-123.  The
ambulance and state police arrived and took Wright to the
hospital.  Charles Dep. at 66.  Wright died from a gunshot wound
from Agent Aster's weapon.  Schwartz Dep. at 75.

## II.  **PROCEDURAL HISTORY**.

        Plaintiff Debra Fraser-Howze, in her individual
capacity and as the Administratrix of the Estate of Barron J.
Wright, filed this action on April 6, 2006 against eight
Defendants: David Christine, the District Attorney for Monroe
County, in his Official and Individual Capacity, the Monroe
County Bureau of Narcotics Investigation of the Office of
Attorney General ("BNI-OAG"), and Agents Jeffrey A. Antinucci,
Keith Charles, Scott L. Fraley, Aster, Muscarello, and Schwartz
in their Official and Individual Capacities.  The case was
originally assigned to the Honorable James Knoll Gardner.  On
July 10, 2006, BNI-OAG filed a Motion to Dismiss the claims

against it because it is an office of the Commonwealth of
Pennsylvania, and the Eleventh Amendment bars it from suit.  On
March 7, 2007, Judge Gardner granted the Motion as unopposed, and
dismissed BNI-OAG.  Also on March 7, 2007, Judge Gardner ordered
that the Complaint was dismissed without prejudice to Plaintiff's
refiling a Complaint against Defendants Antinucci, Charles,
Christine, Fraley and Wheeler pursuant to Federal Rule of Civil
Procedure 4(m).

On June 15, 2007, Plaintiff filed the Amended
Complaint, which is substantially similar to the original
Complaint.  In the Amended Complaint, Plaintiff included claims
against former Defendant BNI-OAG, which was previously dismissed
from this case.  The parties executed a consent to try the case
before the undersigned, and on November 28, 2007, Judge Gardner
approved the consent and referred the case for all proceedings.
On December 14, 2007, Agents Aster, Schwartz and Muscarello filed
this Motion for Summary Judgment.  Plaintiff's Response to the
Motion for Summary Judgment was filed on January 11, 2008, and
the moving Defendants filed a Reply to the Response on January
23, 2008.

Upon review of the Motion, Response and Reply, this
Court sought clarification from counsel on a seeming discrepancy
regarding which parties actually remained in this lawsuit.  On
March 13, 2008, a telephone conference was held with all counsel

7

to clarify which Defendants were still parties.  During that call, counsel stipulated that the only remaining Defendants in this action are Agents Aster, Muscarello, and Schwartz in their Official and Individual Capacities.[1]  In effect, therefore, the following counts in the Amended Complaint have been abandoned: Count IV - Supervisory Liability against Defendant Wheeler as Regional Director of OAG-BNI and OAG-BNI; Count V - Monell Claims as to Defendant OAG-BNI and Wheeler;  Count VI - Negligence as to Defendant OAG-BNI and Wheeler; and Count VII - Respondeat Superior as to Defendants Aster, Antinucci, Charles, Christine, Fraley, Muscarello and Schwartz.  Accordingly, an Order was entered on March 14, 2008, correcting the caption of this case to include only Agents Aster, Muscarello and Schwartz.

The remaining claims are: Unreasonable Force against Agents Aster, Muscarello, and Schwartz (Count I); Violations of Substantive Due Process against Agent Aster (Count II); 42 U.S.C. § 1983 Conspiracy against Agents Aster, Muscarello, and Schwartz (Count III); Wrongful Death against Agents Aster, Muscarello, and Schwartz (Count VIII); Survival Action against Agents Aster,

---

[1]For various reasons including lack of service of the Amended Complaint and Judge Gardner's Order granting the Motion to Dismiss, the following Defendants are no longer parties in this case: The Monroe County Bureau of Narcotics Investigation of the Office of Attorney General ("BNI-OAG"), Agents Jeffrey A. Antinucci, Keith Charles, and Scott L. Fraley in their Official and Individual Capacities, and David Christine, the District Attorney of Monroe County, in his Official and Individual Capacity.

Muscarello, and Schwartz (Count IX); Assault and Battery against Agent Aster (Count X); and Reckless and Negligent Infliction of Emotional Distress against Agents Aster, Muscarello, and Schwartz (Count XI).   Defendants move for summary judgment on the following claims: Plaintiff's Fifth and Thirteenth Amendment claims, Plaintiff's excessive force claims, Plaintiff's wrongful death claim (Count VIII) and Plaintiff's survivor action (Count IX).   In addition, based upon the contention that no excessive force was used against Wright, Agent Aster claims that he is entitled to qualified immunity.

**III.  STANDARD.**

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-252 (1986). The moving party has the initial burden of informing the court of the basis for the motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  An issue is genuine only if there is a sufficient

9

evidentiary basis on which a reasonable jury could find for the non-moving party.  <u>Anderson</u>, 477 U.S. at 249.  A factual dispute is material only if it might affect the outcome of the suit under governing law.  <u>Id.</u> at 248.

To defeat summary judgment, the non-moving party cannot rest on the pleadings, but rather that party must go beyond the pleadings and present "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Similarly, the non-moving party cannot rely on unsupported assertions, conclusory allegations, or mere suspicions in attempting to survive a summary judgment motion.  <u>Williams v. Borough of W. Chester</u>, 891 F.2d 458, 460 (3d Cir. 1989)(citing <u>Celotex</u>, 477 U.S. at 325).  The non-moving party has the burden of producing evidence to establish *prima facie* each element of its claim. <u>Celotex</u>, 477 U.S. at 322-323.  If the court, in viewing all reasonable inferences in favor of the non-moving party, determines that there is no genuine issue of material fact, then summary judgment is proper.  <u>Id.</u> at 322; <u>Wisniewski v. Johns-Manville Corp.</u>, 812 F.2d 81, 83 (3d Cir. 1987).  When the non-moving party will bear the burden of proof at trial, the moving party's burden can be "discharged by 'showing' - that is, pointing out to the District Court - that there is an absence of evidence to support the non-moving party's case."  <u>Jones v. Indiana Area Sch. Dist.</u>, 397 F. Supp.2d 628, 642 (W.D. Pa. 2005)

10

(quoting <u>Celotex</u>, 477 U.S. at 325).

III.   **DISCUSSION**.

A.   **Plaintiff's Fifth and Thirteenth Amendment Claims**.

In a footnote on the first page of their Memorandum of Law in Support of the Motion for Summary Judgment, Defendants contend that they are entitled to Summary Judgment on Plaintiff's Fifth and Thirteenth Amendment claims. Defendants specifically note that the Thirteenth Amendment abolished slavery, and the Fifth Amendment does not apply to state actors.

Defendants first challenge Plaintiff's inclusion of the Thirteenth Amendment. That Amendment provides, in pertinent part: "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII, § 1. In <u>United States v. Kozminski</u>, 487 U.S. 931, 942 (1988), the United States Supreme Court stated that:

> The primary purpose of the [Thirteenth] Amendment was to abolish the institution of African slavery as it had existed in the United States at the time of the Civil War, but the Amendment was not limited to that purpose; the phrase "involuntary servitude" was intended to extend to cover those forms of compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results.

(internal citations omitted). The Third Circuit has further explained that the "prohibition against involuntary servitude has

11

always barred forced labor through physical coercion." Steirer
v. Bethlehem Area Sch. Dist., 987 F.2d 989, 998 (3d Cir. 1993)
(abrogated on other grounds by Troster v. Pennsylvania State
Dep't Corrs., 65 F.3d 1086, 1090 (3d Cir. 1995)).  The only
paragraphs in the Amended Complaint against the remaining
Defendants which contain reference to the Thirteenth Amendment
occur in the Introduction, and not in individual Counts of the
Complaint.  They are as follows:

> It is further alleged that Defendant
> Agent Jeffrey P. Aster, acting under color of
> law, used excessive and unnecessary deadly
> force and killed Barron J. Wright on April
> 13, 2004 in violation of his rights under the
> Fourth, Fifth, Thirteenth and Fourteenth
> Amendments to the United States Constitution
> and 42 U.S.C. § 1983.

> It is further alleged that on the
> aforementioned date Defendants Agent Anthony
> L. Muscarello and Agent Kirk Schwartz
> participated in a sting operation in which
> Barron J. Wright was pursued and unlawfully
> seized through the use of excessive and
> unnecessary deadly force which caused his
> death at the hands of Agent Aster on April
> 13, 2004 in violation of his rights under the
> Fourth, Fifth, Thirteenth and Fourteenth
> Amendments to the United States Constitution
> and 42 U.S.C. § 1983.

Am. Compl., pp. 2-3.  Plaintiff fails to allege any conduct that
could arguably be interpreted as involuntary servitude and does
not contest Defendants' argument as to the Thirteenth Amendment
in the Response to the Summary Judgment Motion.  Plaintiff's
section 1983 claims under the Thirteenth Amendment will be

dismissed.

In footnote one of the Memorandum of Law in Support of the Motion for Summary Judgment, Defendants move for summary judgment on Plaintiff's Fifth Amendment claims because the Fifth Amendment does not apply to state actors.[2]  For support, Defendants cite Huffaker v. Bucks County District Attorney's Office, 758 F. Supp. 287, 290 (E.D. Pa. 1991) and Heinly v. Queen, 146 F.R.D. 102, 109 (E.D. Pa. 1993).  Again, Plaintiff does not respond to this portion of the Motion.

In Ginter v. Skahill, my colleague, Magistrate Judge M. Faith Angell was faced with a similar motion to eliminate Fifth Amendment claims brought against Pennsylvania State Police and an individual trooper.  Judge Angell noted that "the due process clause of the Fifth Amendment applies only to the conduct of

---

[2]The Fifth Amendment reads:

> No person shall be held to answer for a capital, or otherwise infamous crime, unless on presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be liable for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

U.S. CONST. amend. V.

federal actors" and . . . does not limit actions of state officials." 2006 WL 3043083, at *6 (E.D. Pa. Oct. 17, 2006)(quoting <u>Cherry v. City of Phila.</u>, 2004 WL 2600684 *6 (E.D. Pa. Nov. 15, 2004) and <u>Huffaker v. Bucks County Dist. Attorney's Office</u>, 758 F. Supp. 287, 290 (E.D. Pa. 1991)).  In this case, because the Defendants are not federal actors, they are entitled to summary judgment as a matter of law on Plaintiff's Fifth Amendment claims.

**B.   Plaintiff's Wrongful Death Claim.**

Defendants move for summary judgment of Plaintiff's wrongful death claim pursuant to 42 Pa. C.S.A. § 8301[3] pled at

---

[3]42 Pa. C.S.A. § 8301, provides:

**(a) General rule.--**An action may be brought, under procedures prescribed by general rules, to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another if no recovery for the same damages claimed in the wrongful death action was obtained by the injured individual during his lifetime and any prior actions for the same injuries are consolidated with the wrongful death claim so as to avoid a duplicate recovery.

**(b) Beneficiaries.--**Except as provided in subsection (d), the right of action created by this section shall exist only for the benefit of the spouse, children or parents of the deceased, whether or not citizens or residents of this Commonwealth or elsewhere. The damages recovered shall be distributed to the beneficiaries in the proportion they would take the personal estate of the decedent in the case of intestacy and without liability to creditors of the deceased person under the statutes of this Commonwealth.

**(c) Special damages.--**In an action brought under

14

Count VIII of the Amended Complaint.  The Complaint specifically

states:

> As a direct and proximate result of the
> Defendants' negligence as aforesaid, Barron
> J. Wright died on April 13, 2004, and was
> declared dead on said date.
>
> By reason of the death of Barron J. Wright,
> the statutory beneficiary of his estate has
> suffered damages as set forth in 42 Pa.
> C.S.A. 8301, et seq.
>
> By reason of the foregoing, Plaintiff's
> decedent suffered severe injuries to his mind
> and body and endured pain and suffering,
> excited delirium and asphyixiation [sic],
> which damages are recoverable under 42 Pa.
> C.S.A. § 8301, et seq.
>
> By reason of the foregoing, Plaintiff
> individually and/or decedent's estate has
> incurred funeral and/or administration
> expenses, all of which are recoverable under
> 42 Pa. C.S.A. § 8301, et seq.

Am. Compl., pp. 12-13.  Defendants argue that the purpose of the

---

> subsection (a), the plaintiff shall be entitled to
> recover, in addition to other damages, damages for
> reasonable hospital, nursing, medical, funeral expenses
> and expenses of administration necessitated by reason
> of injuries causing death.
>
> **(d) Action by personal representative.--**If no person is
> eligible to recover damages under subsection (b), the
> personal representative of the deceased may bring an
> action to recover damages for reasonable hospital,
> nursing, medical, funeral expenses and expenses of
> administration necessitated by reason of injuries
> causing death.

42 Pa. C.S.A. § 8301.

wrongful death statute is to compensate enumerated relatives for pecuniary loss in the form of lost earnings and services that the decedent would have performed for the family, and a parent cannot recover for the loss of society or companionship of her child. Defendants note that Wright was an adult and was neither living with his mother at the time of his death, nor providing her with any pecuniary benefit.  In fact, she supported him.  Defendants claim that they are entitled to summary judgment on this claim because Plaintiff cannot recover for her son's loss of society or companionship and there is no right to recover punitive damages under the wrongful death statute.

Plaintiff disputes Defendants' characterization of her recoverable damages under 42 Pa. C.S.A. § 8301.  She notes that the Pennsylvania statute creates a right of action for the benefit of a parent, child or spouse to recover damages for the death of an individual caused by the wrongful act or neglect or unlawful violence or negligence of another.  Plaintiff cites the Special Damages section of 42 Pa. C.S.A. § 8301, which provides for reasonable costs for hospital, nursing, medical, funeral expenses and expenses of administration necessitated by reason of the injuries causing death, as her basis for relief.

An examination of the Pennsylvania wrongful death statute indicates that Plaintiff may recover for damages pursuant to this statute.  Defendant's Motion for dismissal of Count VIII

of the Amended Complaint is therefore denied.

   **C.      Whether Debra Fraser-Howze Lacks the Capacity to Sue
           as Administratrix of the Estate of Barron Wright.**

          Defendants also seek a determination that Plaintiff

lacks the capacity to sue as the Administratrix of her son's

estate.  On December 14, 2007, when Plaintiff's Motion for

Summary Judgment was filed, this argument was valid.  On December

18, 2007, however, Plaintiff was appointed Administratrix of the

Estate of Barron Wright by the Register of Wills in Pike County,

Pennsylvania.  Pl.'s Resp., Ex. A.

          Plaintiff argues that her late appointment as

Administrator relates back to the time of the initial filing of

this case on April 6, 2006.  She correctly cites Levinson v.

Deupree, 345 U.S. 648 (1953) and Estate of Robert Fortunado v.

Hendler, 969 F. Supp. 963 (1996) in support of her contention.

Levinson involved a wrongful death action brought by a party not

yet properly appointed as administrator of an estate and the

appointment occurred after the statute of limitation had run.

The Supreme Court stated that a federal court must allow the

appointment to relate back to the time of the initial filing even

if the forum state would not allow the relation back and would

hold the action time-barred in its own courts.

          In Fortunado, Robert Fortunado was shot and killed by

members of the Pennsylvania State Police Sudden Emergency

Response Team during execution of an arrest warrant on

                                  17

misdemeanor charges.  Fortunado's twin brother filed for letters of administration three days before the two-year statute of limitations was due to expire, and filed a section 1983 complaint on behalf of the Estate as personal representative one day before the statute of limitation was due to expire.  Because the brother did not apply for or receive letters of administration of the estate before the statute of limitation had run, the defendants contended that the complaint filed before that time did not satisfy the statute of limitation and his subsequent appointment as administrator did not "relate back" to the filing of the complaint.  The District Court for the Western District of Pennsylvania held that the administrator's post-appointment ratification of the suit had the same effect as if the action had been commenced in the name of the real party in interest pursuant to Federal Rule of Civil Procedure 17(a).  969 F. Supp. at 967-968.

In light of this case law, Defendants' Motion for Summary Judgment on Plaintiff's claims brought in her capacity as Administratrix of her son's Estate is denied.

### D.   **Plaintiff's Excessive Force Claims.**

To establish a claim for civil rights liability pursuant to 42 U.S.C. section 1983, a plaintiff must show: (1) a defendant was acting under color of state law; and (2) that actor deprived them of a right, privilege, or immunity secured by the

18

United States Constitution or federal law.  42 U.S.C. § 1983.
Police officers who violate an individual's constitutional or
statutory rights while acting under color of state law are
subject to liability under section 1983.  Curley v. Klem, 298
F.3d 271, 277 (3d Cir. 2002).  Defendants, as employees of the
BNI-OAG, qualify as state actors for purposes of section 1983
analysis.  See Marcolongo v. Sch. Dist. of Phila., No. CIV.A. 98-
5196, 1999 WL 1011899, at *5 (E.D. Pa. Nov. 5, 1999), aff'd, 262
F.3d 404 (3d Cir. 2001).

     The Supreme Court has made clear that where the alleged
use of excessive force occurs in the context of an arrest,
investigatory stop, or other "seizure" of a free citizen, the
claim must be analyzed under the "objective reasonableness"
standard of the Fourth Amendment.  Graham v. Connor, 490 U.S.
386, 395 (1989).  The court must examine if the officers' actions
in utilizing force were objectively reasonable in light of the
facts and circumstances confronting them regardless of their
underlying intent or motivation.  Curley, 298 F.3d at 279 (citing
Graham, 490 U.S. at 397).  An examination of whether an officer's
use of deadly force was "objectively reasonable" requires a
"careful balancing of the 'nature and quality of the intrusion on
the individual's Fourth Amendment interests' against the
countervailing governmental interests at stake."  Graham, 490
U.S. at 396 (quoting Tennessee v. Garner, 471 U.S. 1, 8 (1985)).

This inquiry requires careful attention to the facts and circumstances of each particular case, and among the factors the court considers are:

> the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he actively is resisting arrest or attempting to evade arrest by flight, as well as the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the officers must contend at one time.

Smith v. Marasco, 318 F.3d 497, 515 (3d Cir. 2003)(citing Graham, 490 U.S. at 396, and Sharrar v. Felsing, 128 F.3d 810, 822 (3d Cir. 1997)). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, not with 20/20 hindsight."  Graham, 490 U.S. at 396. The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving - about the amount of force that is necessary in a particular situation."  Id. at 397.

Defendants argue that summary judgment is appropriate in this case because there is no factual dispute regarding whether Agent Aster had probable cause to believe he needed to use force to prevent Wright from causing immediate death or physical harm to Fraley by running him over with his Explorer.

They note that this Court may consider evidence of events preceding the use of force.  Mot. for Summ. J., p. 9 (citing Abraham v. Raso, 183 F.3d 279, 291 (3d Cir. 1999)).  According to Defendants, before Agent Aster fired his weapon, Wright had demonstrated that he was out of control and dangerous by not complying when the officers ordered him to yield and attempting to evade arrest by first driving his Explorer in reverse, crashing it into Agent Antinucci's vehicle with enough force that Antinucci was knocked back into the vehicle.

Defendants contend that the evidence is uncontroverted that Wright then began "bearing down" on Agent Fraley who was on foot and did not have the benefit of a vehicle to protect him from Wright's "treacherous" driving.  They note that because Wright had already demonstrated that he was willing to drive his vehicle into Agent Antinucci with significant force, Agent Aster was objectively reasonable in believing that Wright would be equally willing to drive his "four thousand pound bullet" into Agent Fraley.  Defendants factually distinguish this case from Abraham, where the Third Circuit reversed the District Court's grant of summary judgment on the basis that significant discrepancies existed among the officers' statements and the statements were not consistent with the physical evidence.  183 F.3d at 292-294.  Here, according to Defendants, no such discrepancies exist because Agent Aster testified at his

deposition that "the front of the Explorer was coming towards" Agent Fraley (Mot. Summ. J., Ex. 1, p. 54), Agent Fraley testified that he "felt like [he] was about to get run over by a vehicle" (Id., Ex. 2, p. 54), and Agent Charles testified that "[a]s the vehicle pulls forward, it appears like it's going to run and strike Fraley." (Id., Ex. 3, p. 58.) Based upon these consistent statements, Defendants argue that it is beyond doubt that Agent Aster fired his weapon only when he saw Wright driving directly at Agent Fraley. Thus, according to Defendants, Agent Aster acted reasonably and Plaintiff cannot prevail on this claim.

Plaintiff responds to this argument by noting that this Court may grant summary judgment as to the reasonableness of the use of deadly force only if the facts taken in the light most favorable to the Plaintiff raise no dispute as to any material fact whether the shooting was objectively reasonable under the circumstances presented. Abraham, 183 F.3d at 290. Plaintiff points to the witness statements of Loren Jeffery and Susan Bonser ("the Bonsers"), who pulled into the parking lot while these events happened and did not hear any verbal commands or any screaming. Pl.'s Resp., Ex. C, pp. 2, 4. This is in direct conflict with the Agents' testimony that they shouted verbal commands to Wright, which he ignored, and Defendants' expert's conclusion based on the Agents' testimony, that the shooting was

22

reasonable because Wright ignored verbal commands to surrender. Plaintiff also calls into question the reasonableness of Agent Aster's use of deadly force based upon the Pennsylvania State Police Ballistics Report, and the FBI Report, which indicate that Agent Fraley's shots were fired from the left side of Wright's vehicle, not from a position in the front of Wright's vehicle. Based upon this report, Plaintiff argues that a jury could reasonably conclude that at the time Agent Aster fired his weapon, Agent Fraley was not in imminent danger of injury or death from the Wright vehicle and it was not objectively reasonable for Agent Aster to so conclude and discharge his weapon in a fashion that fatally wounded Wright.

In contrast to Defendants' contention that the evidence is uncontroverted that Agent Aster reasonably concluded that Wright would be willing to drive into Agent Fraley because he backed his Explorer into Agent Antinucci, Plaintiff contends that a jury might reasonably infer that Wright did not know Agent Antinucci was behind him until after he struck his vehicle because Agent Antinucci testified that Wright did not look back at him until after he struck his vehicle. Antinucci Dep., pp. 88, 96.

In their Reply, Defendants argue that Plaintiff has not met her burden of coming forth with sufficient evidence in response to their Motion for Summary Judgment. As to the issue

of verbal commands, Defendants contend that the Bonsers clearly
state that the first thing they heard was tires screeching from
approximately forty feet away.  Defendants argue that the Bonsers
did not see the entire interaction between Wright and the Agents,
therefore no reasonable jury could conclude that no verbal
commands were given to Wright prior to force being used.
Defendants opine that a reasonable jury could conclude instead
that Wright was accelerating his vehicle at a high rate of speed.
Defendants also take issue with Plaintiff's use of the ballistics
report which identifies the location of the bullets as they
entered Wright's Explorer.  Defendants argue that the report does
not establish where Agent Fraley was standing or Agent Aster's
belief that Wright was going to hit Agent Fraley.

        Taking the facts in the light most favorable to the
Plaintiff as the non-moving party, genuine issues of material
fact remain regarding whether Agent Aster used excessive force
against Wright, therefore Defendants' Motion for Summary Judgment
must be denied regarding Count I, unreasonable force as to Agent
Aster.

        In a footnote, Defendants contend that Agents Schwartz
and Muscarello are entitled to summary judgment on the excessive
force claim because there is no evidence that anyone other than
Agents Fraley and Aster discharged their weapons, and ballistics
analysis conclusively demonstrated that Agent Aster's bullet

killed Wright.  Mot. Summ. J., p.8 n.3.  Plaintiff does not respond to this argument.  This Court agrees with Defendants argument, and Agents Schwartz and Muscarello are entitled to summary judgment on the excessive force claim.

> ### E.    Whether Agent Aster is Entitled to Qualified Immunity on the Plaintiff's Constitutional Claims.

Defendants argue that Agent Aster is entitled to qualified immunity on the constitutional claims raised by Plaintiff.  Qualified immunity may only be granted if a law enforcement officer reasonably believes that his actions did not violate a clearly established constitutional right.  Anderson v. Creighton, 463 U.S. 635 (1987).  This Court must first determine (1) whether the facts, taken in the light most favorable to the non-moving party, show a constitutional violation; and (2) whether the constitutional right was clearly established at the time of the incident.  Saucier v. Katz, 533 U.S. 194 (2001); Bennett v. Murphy, 274 F.3d 133, 136 (3d Cir. 2002).  If the plaintiff fails to make out a constitutional violation, based on the facts taken in the light most favorable to the plaintiff, the qualified immunity inquiry ends and the officer is entitled to immunity.  Bennett, 274 F.3d at 136.

Here, the constitutional violation claimed by Plaintiff is that the deadly force used by Agent Aster against Wright was unnecessary and unreasonable, in violation of Wright's Fourth and Fourteenth Amendment rights.  Agent Aster argues that he was

reasonable in using deadly force against Wright to protect Agent
Fraley, his fellow officer, from serious physical harm.   In
Section III.D., supra, we determined that Defendant's Motion for
Summary Judgment as to the excessive force claim must be denied.
Accordingly, Agent Aster is not entitled to qualified immunity,
and Defendants' Motion must be denied as to this point.

**IV.**      **CONCLUSION**.

       Summary Judgment must be granted with respect to
Plaintiff's claims for violations of Wright's Fifth and
Thirteenth Amendment protections and Plaintiff's excessive force
claims against Agents Muscarello and Schwartz.   The remaining
claims in this case, therefore, are unreasonable force against
Agent Aster (Count I); Violations of Substantive Due Process
against Agent Aster (Count II); 42 U.S.C. § 1983 Conspiracy
against Agents Aster, Muscarello, and Schwartz (Count III);
Wrongful Death against Agents Aster, Muscarello, and Schwartz
(Count VIII); Survival Action against Agents Aster, Muscarello,
and Schwartz (Count IX); Assault and Battery against Agent Aster
(Count X); and Reckless and Negligent Infliction of Emotional
Distress against Agents Aster, Muscarello, and Schwartz (Count
XI).

       An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

_____  :

DEBRA FRASER-HOWZE, in her           :      CIVIL ACTION
individual capacity and as           :
Administratrix of the Estate of      :
Barron J. Wright                     :
                                     :
         vs.                         :      NO. 06-1460
                                     :
AGENT JEFFREY P. ASTER, in his       :
Official and Individual Capacities,  :
AGENT ANTHONY L. MUSCARELLO, in      :
his Official and Individual          :
Capacities, and                      :
AGENT KIRK SCHWARTZ, in his          :
Official and Individual Capacities.  :
_____  :


<u>**ORDER**</u>

AND NOW, this 20th day of March, 2008, upon consideration of
the Motion for Summary Judgment filed by Defendants Agent Jeffrey P.
Aster ("Agent Aster"), Agent Anthony L. Muscarello ("Agent
Muscarello"), and Agent Kirk Schwartz ("Agent Schwartz"), the Response
and the Reply to the Motion, it is hereby ORDERED that the Motion is
GRANTED in part and DENIED in part as follows:

1.    Defendant's Motion is GRANTED on Plaintiff's claims
for violations of Wright's Fifth and Thirteenth Amendment rights;

2.    Defendants' Motion is GRANTED on Plaintiff's
excessive force claims against Agents Muscarello and Schwartz; and

3.    Defendant's Motion is DENIED in all other respects.


                                     BY THE COURT:


                                     _/s/ Henry S. Perkin_
                                     HENRY S. PERKIN,
                                     United States Magistrate Judge